UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

CRIMINAL ACTION NO.

UNITED STATES OF AMERICA                                    PLAINTIFF

V.                           PLEA AGREEMENT

ANGELA HENSON                                               DEFENDANT

* * * * *

1. Pursuant to Federal Rule of Criminal Procedure 11(c), the Defendant will enter a guilty plea to Count 1 of the Information, charging the introduction of an unapproved new drug into interstate commerce in violation of 21 U.S.C. § 331(d).

2. The essential elements of Count 1 are:

   (a) the product is a "drug" within the meaning of 21 U.S.C. § 321(g)(1);

   (b) the drug is a "new drug" within the meaning of 21 U.S.C. § 321(p)(1);

   (c) the Food and Drug Administration has neither approved nor exempted it from approval pursuant to 21 U.S.C. § 355; and

   (d) that the defendant caused the unapproved new drug to be introduced or delivered for introduction into interstate commerce.

3. As to Count 1, the United States could prove the following facts that establish the essential elements of the offense beyond a reasonable doubt, and the Defendant agrees to these facts:

   (a) Under the FDCA, a "drug" is defined to include "articles intended for use in the diagnosis, cure, mitigation, treatment, or prevention of disease in man or other animals or intended to affect the structure or any function of the human

body." 21 U.S.C. § 321(g). A "new drug" is any drug "the composition of which is such that such drug is not generally recognized, among experts qualified by scientific training and experience to evaluate the safety and effectiveness of drugs, as safe and effective for use under the conditions prescribed, recommended, or suggested in the labeling thereof. . . ." 21 U.S.C. § 321(p)(1). The FDCA prohibits, among other things, the introduction or delivery for introduction into interstate commerce of any new drug prior to the Food and Drug Administration's approval of a New Drug Application (NDA) for that drug. In order to secure approval of an NDA, the drug manufacturer must demonstrate to the FDA's satisfaction both safety and efficacy for the drug's intended use(s). A manufacturer may not distribute a drug in interstate commerce prior to approval of the NDA absent certain exemptions, including if it were shipped for an investigational use by scientific experts and pursuant to a valid study. 21 U.S.C. § 355(i). These FDCA requirements were in effect at all times relevant to the Information.

(b) From 2005 to 2024, the Defendant worked for CBA Pharma, Inc., in Lexington, Kentucky. The Defendant most recently held the title of Executive Administrator.

(c) Since at least as early as 2001, CBA Pharma had operated in central Kentucky with the putative goal of achieving Food and Drug Administration ("FDA") approval for an investigational new drug the company named "CBT-1." CBT-1's intended use was to make chemotherapy cancer treatments more effective.

(d) CBA Pharma initially submitted a new drug application (NDA) for CBT-1 to the FDA in 2010 The FDA sent CBA several "refuse to file" letters, citing inadequacies in CBA's NDA. The NDA was eventually filed over the agency's protest in 2012 because the FDA had made a threshold determination that the application was insufficiently complete to permit a substantive review and had intended to refuse it for filing. Applications are filed "over protest" when the applicant requests that the NDA be filed despite its identified deficiencies. [handwritten margin note: "typo"]

(e) The FDA issued a complete response letter on April 19, 2013, highlighting numerous deficiencies in the NDA and outlining multiple issues that had to be addressed before CBT-1 could be approved. Among those deficiencies was CBA Pharma's failure to establish through drug trials the efficacy of CBT-1 for its intended use.

(f) Throughout the subsequent decade, CBA Pharma requested and received multiple time extensions to address the deficiencies in the NDA, but ultimately never completed another drug trial. The company also failed to

substantively address any of the other shortcomings outlined in the FDA's complete response letter.

(g) In February 2023, the FDA informed CBA Pharma that it planned to withdraw the pending NDA for CBT-1, noting that more than a decade had passed since the agency's complete response letter had been issued and there had been no corresponding response by the company.

(h) Despite the difficulties CBA Pharma encountered while seeking FDA approval for CBT-1, the company also sold a product called "Brightstar." Brightstar contained the same supposed active ingredient as CBT-1, but CBA Pharma designated and labeled the product as a "dietary supplement" rather than a drug. CBA Pharma sold bottles of Brightstar capsules largely via internet orders, often selling a bottle for approximately $625.

(i) The Defendant served as one of CBA Pharma's primary points of contact for customers who purchased Brightstar. The Defendant personally packaged and shipped bottles of Brightstar to purchasers, including to customers outside of Kentucky. This included, for instance, shipping bottles of Brightstar to customers in multiple states in 2023. She also corresponded with customers about the putative uses of Brightstar, claiming, among other things, that Brightstar was used as to treat cancer and COVID-19. In those communications, the Defendant provided direction to customers on the dosage and duration of use of Brightstar capsules. Thus, when selling Brightstar to customers, the Defendant intended the product to be used to cure, mitigate, treat, or prevent disease and it was therefore a "drug" under the FDCA. Moreover, Brightstar was also a "new drug" under the FDCA because it was not generally recognized by qualified scientific experts to be safe and effective for use.

(j) Brightstar was not the subject of an FDA-approved NDA nor was it exempted from this requirement. As such, the FDA has neither approved Brightstar nor exempted it from approval pursuant to 21 U.S.C. § 355.

4. The statutory punishment for Count 1 is imprisonment for not more than 1 year (a misdemeanor), a fine of not more than $100,000, and a term of supervised release of not more than 1 year. A mandatory special assessment of $25 applies, and the Defendant will pay this assessment to the U.S. District Court Clerk at the time of the entry of the plea.

5. Pursuant to Rule 11(c)(1)(B), the United States and the Defendant recommend the following sentencing guidelines calculations, and they may object to or argue in favor of other calculations. This recommendation does not bind the Court:

   (a) United States Sentencing Guidelines (U.S.S.G.), November 1, 2024, manual, will determine the Defendant's guidelines range.

   (b) Pursuant to U.S.S.G. § 1B1.3, the Defendant's relevant conduct includes all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant and all harm that resulted from those acts or omissions.

   (c) Pursuant to U.S.S.G. § 2N2.1, the base offense level is 6.

   (d) Pursuant to U.S.S.G. § 3E1.1 and unless the Defendant commits another crime, obstructs justice, or violates a court order, decrease the offense level by 2 levels for the Defendant's acceptance of responsibility. If the offense level determined prior to this 2-level decrease is level 16 or greater, the United States will move at sentencing to decrease the offense level by 1 additional level based on the Defendant's timely notice of intent to plead guilty.

   (e) If the Defendant meets the criteria set forth in U.S.S.G. § 4C1.1(a), decrease the offense level by 2 levels.

6. No agreement exists about the Defendant's criminal history category pursuant to U.S.S.G. Chapter 4.

7. The Defendant agrees to cooperate with the United States in the investigation and prosecution of other individuals or entities, including testifying in all proceedings. All statements and testimony that the Defendant provides must be truthful, and this Agreement does not preclude the prosecution of the Defendant for perjury or making false statements. If the Defendant complies with her obligations under this Paragraph, the United States agrees to recommend a noncustodial sentence, provided that the Defendant does not violate

any of the provisions of this Agreement or violate the terms of her release while awaiting sentencing.

8. The Defendant waives the right to appeal the guilty plea, conviction, and sentence. Except for claims of ineffective assistance of counsel, the Defendant also waives the right to attack collaterally the guilty plea, conviction, and sentence.

9. The United States will recommend releasing the Defendant on the current conditions for future court appearances if the Defendant does not violate the terms of the order setting conditions of release.

10. The Defendant abandons any interest in, and consents to the official use, destruction, or other disposition of, any item obtained by any law enforcement agency during the course of the investigation, unless an item is specifically provided for in another provision of this Agreement. The Defendant also waives any notice of a proceeding to implement the official use, destruction, or other disposition of any item abandoned under this paragraph.

11. The Defendant agrees to cooperate fully with the United States Attorney's Office by making a full and complete financial disclosure. Within 30 days of pleading guilty, the Defendant agrees to complete, sign, and return to the United States Attorney's Office a financial disclosure statement or affidavit disclosing all assets in which the Defendant has any interest or over which the Defendant exercises control, directly or indirectly, including those held by a spouse, nominee, or other third party, and disclosing any transfer of assets that has taken place within three years preceding the entry of this plea agreement. Upon request, the Defendant agrees to provide the United States Attorney's

Office with records verifying his/her financial information or with any releases required to obtain such records, with such releases being valid for a period extending 90 days from the date of sentencing. The Defendant will submit to an examination, which may be taken under oath and may include a polygraph examination. Prior to sentencing, the Defendant agrees to notify the United States Attorney's Office and obtain its consent before transferring, encumbering, or disposing of any interest in property with a value exceeding $1,000.00 owned or controlled directly or indirectly, individually or jointly, by the Defendant, including any interest held or owned under any name, including trusts, partnerships, and corporations. If the Defendant is ever incarcerated in connection with this case, the Defendant will participate in the Bureau of Prisons Inmate Financial Responsibility Program, regardless of whether the Court specifically directs participation or imposes a schedule of payments. The Defendant agrees to notify the United States Attorney's Office of any material changes in his/her economic circumstances, as described in 18 U.S.C. § 3664(k), which occur prior to sentencing, within seven days of the event giving rise to the changed circumstances. If the Defendant fails to comply with any of the provisions of this paragraph, the United States, in its discretion, may refrain from moving the Court pursuant to U.S.S.G. § 3E1.1(b) to reduce the offense level by one additional level, and may argue that the Defendant should not receive a two-level reduction for acceptance of responsibility under U.S.S.G. § 3E1.1(a).

12. The Defendant understands and agrees that, pursuant to 18 U.S.C. § 3613, whatever monetary penalties are imposed by the Court will be due and payable immediately and subject to immediate enforcement by the United States. If the Court

imposes a schedule of payments, the Defendant agrees that it is merely a minimum schedule of payments and not the only method, nor a limitation on the methods, available to the United States to enforce the judgment. The Defendant waives any requirement for demand of payment on any fine, restitution, or assessment imposed by the Court and agrees that any unpaid obligations will be submitted to the United States Treasury for offset. The Defendant waives any defense or objection to any action to enforce the collection of financial obligations to be imposed in connection with this prosecution, including, but not limited to, collection procedures authorized by the Federal Debt Collection Procedures Act, 28 U.S.C. § 3001, et seq., 18 U.S.C. § 3664, or 18 U.S.C. § 3613. The Defendant expressly authorizes the United States to obtain the Defendant's credit reports at any time. The Defendant authorizes the U.S. District Court to release funds posted as security for the Defendant's appearance bond in this case, if any, to be applied to satisfy the Defendant's financial obligations contained in the judgment of the Court. The Defendant authorizes the United States Attorney's Office to inspect and copy all financial documents and information held by the U.S. Probation Office.

13. This document contains the complete and only Plea Agreement between the United States Attorney for the Eastern District of Kentucky and the Defendant. The United States has not made any other promises to the Defendant.

14. This Agreement does not bind the United States Attorney's Offices in other districts, or any other federal, state, or local prosecuting authorities.

15. The Defendant and the Defendant's attorney acknowledge that the Defendant understands this Agreement, that the Defendant's attorney has fully explained this

Agreement to the Defendant, and that the Defendant's entry into this Agreement is voluntary.

PAUL C. McCAFFREY
ACTING UNITED STATES ATTORNEY

Date: 8/11/25   By: /s/
Andrew E. Smith
Assistant United States Attorney

Date: August 7, 2025   /s/ Angela Henson
Angela Henson
Defendant

Date: 8/7/2025   /s/ William Butler
William Butler
Attorney for Defendant